```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION

VICKIE COX EDMONDSON,        }
                             }
     Plaintiff,              }
                             }     CIVIL ACTION NO.
v.                           }     06-AR-0412-S
                             }
THE BOARD OF TRUSTEES OF THE }
UNIVERSITY OF ALABAMA,       }
                             }
     Defendant.              }
```

**MEMORANDUM OPINION**

Before the court is the motion of defendant, the Board of Trustees of the University of Alabama ("the Board"), for summary judgment on the action brought by plaintiff, Vickie Cox Edmonson under Title VII of the Civil Rights Act of 1964 for gender and race discrimination, under the Equal Pay Act ("EPA"), and under Title VII for retaliation. It is impossible to discern from the complaint whether plaintiff is blaming the purported adverse employment action (inadequate pay) by defendant on her gender, her race, her protected activity, or some combination of these proscribed motivations. For the reasons that follow, the court will grant the Board's motion.

*Facts*

The Board is the entity that determines the major policies of the University of Alabama System, including those at the University of Alabama at Birmingham ("UAB"). Edmonson is a black female who is currently employed as an Associate Professor in the department

of Management, Marketing, and Industrial Development ("MMID") at UAB's School of Business.  She was hired by UAB as an Assistant Professor in 1996 at a starting annual salary of $64,000.  Edmonson and UAB initially entered into a nine-month contract, but Edmonson has been a faculty member within the MMID from the time that initial agreement was signed until today.  In October 2002, Edmonson was awarded tenure and was promoted to the academic rank of Associate professor within the MMID department.

UAB bases its annual review of its faculty members on three factors: teaching, service, and research productivity.  In her 2003-04 annual review, Edmonson received "excellent" ratings in the categories of teaching and service, and a "good" rating in research productivity.  Although none of her articles were published in either 2003 or 2004, one of her articles was accepted for publication in 2004.  The sole black female faculty member within the MMID department, Edmonson was receiving the lowest salary of all fellow MMID Associate Professors as of December 2004.  Moreover, all three of the male Assistant Professors (the academic rank below that of Edmonson) earned a higher salary than did Edmonson.  Below is a chart summarizing the compensation of the various faculty members in the MMID department, as of December 10, 2004:

| Full Professors (Tenured) | Associate Professors (Tenured) | Assistant Professors (Non-Tenured) |
|---|---|---|
| Jack Duncan (white male) $192,000.00 | Doug Ayers (white male) $107,199.96 | Eric Jack (black male) $95,249.97 |
| Bob Robicheaux (white male) $144,999.99 | Karen Kennedy (white female) $101,999.99 | Robert Underwood (white male) $95,199.96 |
| Jay Smith (white male) $142,471.09 | Susan Key (white female) $84,860.03 | Philip Musa (black male) $85,665.96 |
| Tom Powers (white male) $134,679.96 | Vickie Cox Edmonson (black female) $81,114.96 | Barbara Wech (white female) $84,585.96 |
| George Munchus (black male) $98,584.08 | | |
| Warren Martin (white male) $97,149.96 | | |

At the beginning of the 2004 spring semester, assistant professor Robert Underwood, who is white, began performing a routine in the MMID department building in which he impersonated an elderly, grumpy black man whom he called "Porkchop." Underwood performed his "Porkchop" act in front of several black administrative employees, many of whom were very offended and embarrassed by Underwood's racially insensitive behavior. At least one, and possibly several, employees in the MMID department complained about the incidences to Associate Professor Susan Key, and Key subsequently reported the behavior to Dean Robert Holmes

and to Assistant Dean Lowell Broom.  Key also told Edmonson, who was then serving on the School of Business Committee on Diversity, about the "Porkchop" incidences.

After she learned about Underwood's actions, Edmonson requested that the Committee on Diversity investigate the matter.  The committee then met with Underwood, who offered his side of the story.  After this meeting, the committee recommended to Dean Broom that Underwood be sanctioned or punished.  Dean Broom did not adopt the committee's recommendations, and Underwood received a promotion (which has since been rescinded) and a salary increase after the committee report.  Meanwhile, after she complained about the "Porkchop" incidences, Edmonson received the smallest salary increase — 1.9% — of all faculty members in the MMID department in October 2004.  In December 2004, full-professor and Department Chair Bob Robicheaux decided that he wanted a larger office, so he moved into the office that Edmonson had been occupying.  Edmonson then moved to a small interior office that had previously been used for closet space.

*Summary Judgment Standard*

In considering the Board's motion, the court must construe the evidence and make factual inferences in the light most favorable to Edmonson, the nonmoving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  The court may enter summary judgment only if it is shown

"that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). At this juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43 (1986) (citations omitted). This determination involves applying substantive law to the substantive facts that have been developed. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party, based on the applicable law in relation to the evidence developed. *See id.* at 248; *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

*Analysis*

**I. Title VII Discrimination**

In order to state a *prima facie* case of Title VII discrimination in compensation, a plaintiff must establish that (1) she belongs to a protected class; (2) she received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) she was qualified to receive the higher wage. *See Cooper v. Southern Co.*, 390 F.3d 695, 735 (11th Cir. 2004) (compensation discrimination by race); *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1528 (11th Cir. 1992) (compensation discrimination by gender). Edmonson belongs to two protected classes. The Board contends that Edmonson cannot sustain

her gender or racial discrimination claim because she was not qualified to receive a higher wage than she did. The court nevertheless disagrees with the Board on this point; Edmonson's general qualifications are reasonably disputed by the parties, and the court accordingly cannot decide this question at the summary-judgment stage.

Perhaps anticipating that the court would find that Edmonson has established a *prima facie* case of discrimination, the Board identifies Edmonson's low research productivity as its legitimate, non-discriminatory reason for the disparity in pay between Edmonson and her white and/or male counterparts. Specifically, the Board says that although Edmonson received "excellent" ratings within her department in the categories of teaching and service, forty percent of her overall ranking for purposes of determining compensation was based on research performance compared to all UAB faculty. The Board says that Edmonson received one of the lowest overall rankings because she had no new publications in either 2003 or in 2004.

Once a defendant provides a legitimate, non-discriminatory reason for the disparity in pay, the burden shifts to the plaintiff to show that the defendant's articulated reason is pretextual. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998). In arguing that she can establish the necessary indicia of pretext at trial, Edmonson asserts only that she, as a tenured

professor, possesses qualifications that are "clearly superior" to those of higher-paid, but non-tenured, assistant professors Eric Jack, Robert Underwood, Phillip Musa, and Barbara Wech. *See* Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J. (Doc. No. 17) (herein, "Pl.'s Opp."), at 18-23.  The only evidence to which Edmonson points that could possibly help to undercut the Board's stated reason for the pay disparity is that Edmonson had one article accepted for publication by *Emerald Management Xtra* in 2004, and that the Board counts acceptances as well as actual publications when considering a professor's research productivity.[1]

But while Edmonson's having had one article accepted for publication in 2003-04 is relevant in light of the Board's articulated reason for paying her less than it pays other MMID faculty members, it simply is not enough evidence to establish that the Board's stated reason is pretextual.  In particular, even in light of this evidence, there can be no doubt that the assistant

---

[1] Edmonson presents other arguments in support of her assertion that her qualifications are "clearly superior" to those of the higher-paid Assistant Professors, but none of them can discredit the fact that Edmonson had lower research productivity than every single Assistant Professor within the MMID department.  Specifically, Edmonson says that various non-tenured associate professors, each of whom receives comparatively higher pay, have taught relatively fewer classes, have published relatively fewer journal articles in total (i.e., not just in 2003 and 2004), and/or have experienced "behavioral problems" whereas she has not.  *See* Pl.'s Opp, at 20-22.  None of these facts, if proven, could persuade a reasonable jury that a discriminatory reason more likely motivated the Board or that the Board's proffered reason for the pay disparity is unworthy of credence.  *See Reeves v. Sanderson Plumbing Product, Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106 (2000).  Edmonson also points out that she completed a book that was accepted for publication in 2005, but this also cannot constitute evidence of pretext because Edmonson's complaint centers on alleged discrimination that took place in or before December 2004.  *See id.*, at 22.

professors whose salaries are in sums to which Edmonson believes she is entitled, were uniformly more prolific than Edmonson in their research productivity during the relevant time frame. In 2003 and 2004, Jack published four articles, made four peer-reviewed or refereed presentations, and had three refereed proceedings.  During those same years, Underwood published two articles and made two professional presentations; and Wech published three articles, made two presentations, and had one refereed proceeding.  In 2004 alone, Musa published one refereed article, made three presentations of refereed papers, and had two refereed proceedings.  Edmonson not only did not publish any articles in 2003 and in 2004, but her Annual Faculty Activity Reports for 2003 and 2004 show that she made no presentations and had no refereed proceedings in either of those years.  Indeed, her only documented research activity for the two-year time span at issue is her having written an article that was not published, but that was accepted for publication.  This lone piece of relevant evidence is insufficient to support Edmonson's self-evaluating assertion that her qualifications are "clearly superior" to those of Jack, Musa, Underwood, or Wech, and it is insufficient to establish that the Board's proffered, non-discriminatory reason for the pay disparity was pretextual.  Moreover, The Board is entitled to summary judgment on both of Edmonson's Title VII discrimination

claims, whether they are considered as alternative, cumulative, or intersectional.

## II. Equal Pay Act

The Board contends that Edmonson's claim for relief under the EPA must fail because, due to her relatively low research productivity, she did not perform substantially the same work as higher-paid males. In order to establish a *prima facie* case under the EPA, Edmonson must prove that the Board "pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brenan*, 417 U.S. 188 (1974); *see Mitchell v. Jefferson County Bd. of Educ.*, 936 F.2d 539, 547 (11th Cir. 1991). Edmonson does not respond to the Board's contention that she cannot establish a *prima facie* case. Accordingly, Edmonson has abandoned her EPA claim and the Board's motion for summary judgment with respect to such claim is due to be granted.

## III. Title VII Retaliation

In Count Three of her complaint, Edmonson alleges that the Board retaliated against her for engaging in statutorily protected activity in violation of Title VII. In order to establish a *prima facie* case of retaliation under Title VII, Edmonson must prove that (1) she participated in an activity protected by Title VII; (2) she

9

suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment action. *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000).

The court agrees with the Board that Edmonson's retaliation claim must fail because Edmonson cannot show that she suffered an "adverse employment action," as that term is defined in the context of retaliatory conduct. In her opposition to the Board's motion for summary judgment, Edmonson identifies three of the Board's actions which she says were adverse as to her. First, Edmonson says that although she served on a number of committees before the "Porkchop" incidences, she was neither selected nor appointed to any committees thereafter. Next, Edmonson says that in October 2004, she received the smallest salary increase of all professors in her department. Finally, Edmonson says that in December 2004, she was "forced" to move into an interior office that had formerly been used as a closet, and that she was "forced" to work out of this office for an entire semester.

As the Board correctly points out, the Eleventh Circuit has explained that an adverse employment action must be "objectively serious and tangible enough" to alter the plaintiff's terms and conditions of employment. *Gupta v. Florida Board of Regents*, 212 F.3d 571, 588 (11th Cir. 2000). In other words, in order to constitute an adverse employment action, "an employee must show a

**serious and material** change in the terms, conditions, or privileges of employment . . . as viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original).  None of the actions to which Edmonson says she was subjected can meet this threshold level of seriousness or materiality to constitute an "adverse employment action."  Specifically, Edmonson does not contend that she sustained any "serious" or "material" change along the lines of termination of employment, docked pay, or loss of benefits or promotion opportunities.  *See id.* at 1243-1244.  To the contrary, Edmonson's primary objection seems to be that although she received a raise in October 2004, that raise just was not as much as she wanted it to be.  Perhaps Edmonson subjectively believed that she was the target of various adverse employment actions, but her belief is not objectively reasonable under Eleventh Circuit precedent.

The Board may or may not be correct that Edmonson's retaliation claim is due to be dismissed based on her alleged inability to prove the first and third elements of her *prima facie* case.  The court is inclined to agree (but is not completely convinced) with Edmonson that she could possibly establish a causal connection between her purported "protected activity" and the purported "adverse employment action(s)."  On the other hand, the court believes that whether there is any evidence tending to show

that Edmonson participated in any activity protected by Title VII is potentially a very close question.  Rather than to unnecessarily split hairs by deciding these questions, the court will instead jump past them and grant the Board's motion for summary judgment based on the one glaring defect in Edmonson's retaliation claim, namely, that she did not suffer an "adverse employment action," as that term is defined in the context of Title VII.  The court hopes that by not ruling on the alternative defenses that the Board claims to be absolute, it is not foreclosing the possibility that the Court of Appeals may find that this court's reason is wrong but that its conclusion is right.

*Conclusion*

For the foregoing reasons, the Board's motion for summary judgment will be granted.

DONE this 15th day of March, 2007.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

12